Good morning, your honors. Carl Gunn appearing for Mr. Wilburn. I'm going to try to reserve two minutes for rebuttal, your honor, and I'll do my best to keep track of my own time. Thank you. For better or for worse, there are court rules that guide proceedings in criminal cases. Parties have to comply with those rules and district courts have to comply with those rules. You're not going to argue rule 32 issue, are you? I am going to argue it, your honor. But the court gave you an opportunity to continue the hearing and you declined that invitation. I didn't. I know. Mr. Wilburn's counsel did, yes. Your honor, I don't think that that changes the rule. The rule says the court can't consider the objection without good cause. It actually contrasts with rule 16 on sanctions. Why isn't good cause that they gave you the opportunity to have more time you didn't take it? I'm Well, the good cause applies to whether there was good cause for the objection being late. It does kind of, what I was about to say is it contrasts, for example, with rule 16 on discovery, which lists a number of different types of sanctions for late discovery and specifically lists the option of continuance. So it does contrast with that. So I guess my argument does come down, though, to the idea that a court can't somehow substitute for good cause and offer to continue it to continue. All I can suggest to your honors is there's nothing in the rule that suggests that as an alternative. What the rule says is there has to be good cause for the objection being late. And the record arguably contains an explanation for why it was late. But let's move on because I want to I want to ask you an important question for me and what I'm struggling with. And maybe opposing counsel can listen and give me an answer as well. Do you agree that at a minimum, Wilburn possessed four hundred and seventy one unique account numbers? OK, let me tell you how we get there. But assuming that number is correct, the minimum intended loss attributable to Wilburn is two hundred thousand. You're with me. Yes. So far. Good. That would support the court's application of the twelve level enhancement. Correct. And so why shouldn't this court find that if the district court erred on that, the error was harmless because you're going to be in the same range? I think your honor started off your question with whether I conceded there were at least four hundred seventy one unique account numbers or access devices. And the answer is I don't. OK, there was no finding to that effect because the district court's view was it didn't matter whether they were unique. Correct. But you can look at the record and you can add up the unique accounts and eliminate all possible duplications and the minimum would still be within the same range. I don't think. Did you do the math? I didn't go through the four hundred numbers. I don't think that's appropriate for this court as an appellate court to do because there's well, well, I think that's a factual question that the district court's responsible for doing and that the parties are responsible for litigating in the district court. There is certainly a question about usability still, even if you have four hundred seventy one different numbers in there. And I think that's that's a question for the district court to use ability. What's the what issue did you present to the court that challenged the usability of the account numbers or the access to the burdens on the government, your honor, to show usability? I think there was an objection. It may not have been the most detailed objection, but the defense counsel argued at the sentencing hearing. There was a finding on right. I mean, in other words, by by counting up the number that he counted up, even assuming there were permissible duplicates, one assume it must be that he found each each of the ones that he was counting to be usable. You mean the district court? No, I don't think so, your honor. I don't think there was any finding about usability. The district court certainly never said anything about usability despite counsel. She basically said they didn't have to be showed, show they were capable. He argued he objected. It's an excerpt 18 that the access devices had to be shown to be, quote, capable of being used, unquote. I think they didn't have to. I mean, in fact, they don't have to be capable of being used by themselves. They have to be capable of being used either by themselves or with something else. Right. But but he he are. I think his objection was sufficient to raise the issue of usability as as held in the own on a Jewish only. Yes, our case. And I can't pronounce it. I know your honor wrote the opinion. You know, I think it encompasses that requirement of usability. And that case says that usability, the burdens on the government to show it. But in that case, the defendant challenged the usability and there were expired numbers and there was no evidence of the first time round by the government with respect to the issue when it was clearly a frontal challenge by the defendant, something we really don't have. Objection here could have been more detailed and better. But I think, you know, there's Ninth Circuit case law that talks about how it's claims that are waived, not arguments. And I think the objection was sufficient to go back to your honors. There was also a challenge by the defense attorney in the district court that he questioned the reliability of what he called these computer dumps by the agent. So, I mean, your honor, I assume is going through an exhibit that's attached to the declaration when you get the. Well, it is in the record. But the defense reliability of that, I believe it's an extra. Go back to the same point. When the district judge found that counted, whatever he counted, he must have been finding them reliable. Well, buddy. Well, therefore, a subset of them are also reliable. I, I don't think that challenge was made that that wasn't reliable. And he said, I'm counting. But he never got to the position of presenting that evidence in that argument because the judge said it didn't matter. It didn't matter whether it was reliable. Well, the judge said, I think his argument about the usability, but it can't be true about reliable. If these things don't exist, then he couldn't have counted them. Well, reliable. When I talk about reliable, I'm talking about the accuracy of the list. Right. And if he counted them, he must have thought it was accurate. Well, I don't I don't. But yes, but the reliability could go to the reliability. It could go to the reliability of the numbers being different in the in addition to the reliability of how many there were. He didn't he didn't specify in what ways he thought it was unreliable. His concern was that this agent was not a forensic computer analyst. And so this agent's claim about what was on the computer would not be reliable. And that could include whether they were different numbers as opposed to duplicate numbers. It could include all sorts of problems or questions about them. He counted on the computer two different numbers. I'm sorry. If there was number one and number two on the computer. Correct. And the judge said those were two numbers. He must have been finding it reliable that there was a one and a two. Well, but he's not. She was not finding it reliable that there was a one and a two rather than two ones. He was simply finding reliable that there were more than 400 numbers. Whether they were different numbers. She never made a finding about either implicit or explicit because she ruled it didn't matter. I have a couple of questions for you if I can. Assume a defendant has the same stolen account number embossed on a card in his wallet and written on a piece of paper at home. OK. From which he may produce additional counterfeit cards. Isn't that intended loss double? You mean do you count that as two active devices? Yes. Do you count that as two? Your Honor, I think that's a difficult, more interesting question than the one that's presented in this case to get to 400 because in this case that possibility only applied to 112 of the numbers because there are only 112 cards. So maybe that would get you up to 224 if I'm remembering my 112 number correctly. But it doesn't get you up to 400. To get up to 400 you have to say it doesn't matter whether a number in the notebook and different numbers in different places on the computers are the same. Let me try this one on you. Let's say perhaps Wilburn wasn't going to bring his laptop to Nordstrom's to make a purchase but he could have brought his iPad or his iPhone. Why shouldn't the electronic version of an account number constitute an access device? And constitute three or four if it's in three or four places? Right. Because, Your Honor, that's going to sweep in people who are just backing up things. That's going to sweep in people who didn't tear up the piece of paper they wrote the number on before they typed it in the computer. It's going to sweep in the people who didn't empty their recycle bin so the number's in the recycle bin in addition to on the hard drive. And that has nothing to do with culpability. If the person was actually intending to have four different people use it, as evidenced by four different cards he came out to four different people to use. All you needed was one, right? To do that. All you needed was one number to share it with four people. Correct, but having the same number in four different places on your computer or in the recycle bin or in the unallocated space or in the piece of notebook paper or on the list you type out. From the back of your hand. Yeah, because you're less computer oriented and more hard copy oriented that person is not more culpable. What makes him more culpable is if there's an indication that perhaps he's going to have four different people be using it at the same time. As evidenced by four different cards, but not as evidenced by having it on a piece of paper next to your computer next to a printout. Okay, you're out of time. We'll give you a minute or so. Thank you. Good morning, your honors. May it please the court. Ryan Weinstein for the United States. I'll begin with the overlapping account numbers issue since that's where the court's focus seems to be. Your honor is absolutely right. This is a harmless error issue if there was error at all. In addition to everything else that was said about the harmless error, I mean, why isn't it possible that even though you would have ended up in the same guideline, the judge would have treated it differently for the actual sentencing, depending what number he thought it was. Then he might have thought 770 of these is worse than 471 of them in terms of 3553 factors, even though they were the same guideline. It's a hypothetical possibility, your honor, but in this case that's not what happened. In fact, in this case, the court took note of the difference between the guidelines estimated loss amount and the much lower restitution amount. It actually departed downwards based on that differential. So the court in this instance didn't look at the high number of access devices and the correlating estimated loss amount and decided to impose a higher, harsher sentence. In fact, the court went quite the opposite direction. So in short, the answer is not in this case, although it's a hypothetical possibility. But in any event, any error here was harmless because the only evidence, the unchallenged evidence before the district court was that there were 770 unique account numbers. So even crediting defendant's argument that these overlapping account numbers had any kind of... 770 unique? I thought there were not 770 unique. I thought there were, there was some overlap among the 770. I think you need to explain unique. Were there duplications in the 770 unique numbers? No, there weren't. That is the bare assertion that was offered at sentencing, although the defendant declined to provide any evidence of it. But even crediting that legal proposition that the overlap mattered, and even crediting... I'm not understanding. Sure. Did the district judge not make clear that she thought the overlap didn't matter? Toward the end of the proceedings, the court concluded that as a legal matter, whether or not there were overlaps didn't make a difference under the guidelines. And wasn't that because there was an overlap? No? You're saying that this was just an idle conversation and in fact, as to the 770 numbers, there was no overlap? Before the court was a sworn declaration from the law enforcement officer saying he went through all the account numbers and found 770 unique ones. That was the unchallenged evidence before the district court. So regardless whether the district court found that as a legal matter, the overlapping was insignificant, is kind of besides the point. Because the defendant, even though given the opportunity, elected not to challenge the evidence that was presented before the district court. But even if we credit the assertion offered without evidence to the district judge that there were roughly 100 overlapping access devices, this is something that defense counsel made mention of at pages 11 and 12 of the excerpts of record. Even if we take all those out of the 770, we're still far above the 400 access devices needed to trigger the $200,000 12 level loss enhancement. That's because, as your honor pointed out, 400 times 500 is 200,000. So in effect, 370 of the 770 unique account numbers would have to end up being in fact had been overlapping for it to make any difference to the guidelines. And not only did defense counsel not assert that so many account numbers are overlapping, he offered no evidence of it. So well, even if the court were to find complete overlap between the three sources of account numbers, the record supports the application of a 12 level enhancement because Wilburn possessed at least 471 stolen credit card numbers. At a minimum of 500 each, that makes the total intended loss of $235,500 end up at the same place. I certainly agree, your honor. Talk to me about this. This is interesting to me, maybe only to me. Is it your position that if the same account number was written twice in Wilburn's notebook, it would be one access device or two? I think under the guidelines, which says per access device, $500 per access device, without a limitation on access devices that may bear the same account numbers, those two account numbers count as two. And if he had the same stolen account number embossed on two counterfeit credit cards, would that be one access device or two? Well, in that case, it's even less of a close question. That would be two. Now assume he has a number written down on a piece of paper and he's going to go to the machine to emboss a credit card and he takes the card and he's got the piece of paper. He's going to take that number and emboss it. Is that one or two? Still two access devices, your honor. Of course, defense counsel, there are always factual circumstances that under which the guideline estimation method may overstate the actual intended or actual loss. And in those circumstances, defense counsel can come forward with that evidence. For example, saying, oh, it was just an automatic backup copy my computer made that I never intended to use. And the court is free to bury or depart downwards, as the court actually appeared to do in this case. Well, then talk about that hypothetical for me. It's sentencing that was posed by the district court's judge. If Wilburn had a backup file on his computer with the same 471 account numbers, would that be another 471 access devices? How far do we take this duplication scenario? Well, look, the guidelines are a starting point. They're advisory. In any case, all those 471 access devices and the copies of the 471 access devices. And the ones on the backup drive and the ones that maybe are written in a notebook, they're all the same. So we have four levels of repetition. Do we count it four times? Really? As a starting point under the guidelines, your honor, that each one is counted as an access device. Can you explain to me, looking at the statute, why that's the case? Sure. Because it doesn't talk about a writing or a piece of paper. It talks about an account number, right? I understand why a card and an account number might be, although that sounds dubious. But certainly writing the same account number in five places, what's the support for that in the statute? The statute of conviction, your honor, is possession of 15 or more access devices. That's right. And I'm reading the definition of access device. And the statute of conviction is not, however, possession of access to 15 or more accounts. I understand that. But I want to know from the definition of access device, we are getting the idea that three pieces of paper with the same account number written on it are three access devices. Because your honor, 1029E... I'm reading it. Okay. It says any access device. It doesn't say any access device, including account numbers, cards, plates, etc. The account number is not the piece of paper. Right. And the government's position is that... So the same account number is written in three places. There's still one account number. Under the definition of access device is any account number, not just those account numbers that aren't duplicated somewhere else in the defendant's possession. I'm sorry. And the number is an abstraction. It's not a piece of paper. So the number itself is the access device, not a piece of paper with the access number written on it. That same logic extended to physical credit cards would hold that eight credit cards distributed to... Well, I started by saying any card is a different story. But with regard to the account number, it's the number, not what it's written on. Or whether a computer it's on or anything else. I mean, I don't even see an argument to the contrary. Well, respectfully, the statute doesn't make that differentiation. However... It certainly does. It doesn't say piece of paper. It says account number. It says any account number. And so that includes cards and account numbers wherever they may appear. Piece of paper in the iCloud. You've got an account number. That's an access device under the statute. Right. An access device is an access device no matter how many times it's repeated, no matter how many forms it may take. That is the government's position. But regardless, as Your Honor already pointed out, the only evidence before the district court was that there were 770 unique account numbers. 770 unique account numbers, far above the 400 access device threshold needed to sustain the 12-level enhancement. And look, going back to Your Honor's point, Judge Berzon, there is reason that it's sensible to assume that the more copies of an account number that a defendant has, the more harm he or she intends to cause. He has a good memory. He doesn't need any copies. Again, there may be countervailing evidence which a defendant is... That's why, I mean, you know, it seems to me that, again, a number is an abstraction. And it doesn't exist in any particular place. And if somebody has a good memory, he doesn't need any pieces of paper. I think the underlying problem here is that if you have more than one number in several places, it doesn't necessarily mean you're more culpable or that you're likely to commit more crimes than someone who may have a better memory or may have more friends with whom he can share a single account number. There's a disjoint to argue. And I'm not saying you're making this argument. But there's a disjoint in the guidelines, I think, to say that somebody ought to get hit harder and sentenced longer because they have more numbers, especially if many of those numbers are duplicates. I think that's the underlying problem and tension that I see with all this. I see what you're saying. I also see that my time has expired. But you can comment on that. Go ahead. OK, just briefly, I agree that there is an issue there. My position is that it is a sensible starting point to count each and one of the access devices as access devices because, as shown here, a defendant can and will distribute access devices to its confederates to maximize the fraud proceeds from exploiting these particular accounts. Access device fraud is a short-term game. The goal is to maximize those fraud proceeds before the fraud is detected and reported. And one quite easy way to do so is to duplicate those account numbers, pass them out, and tell your confederates to go en masse and start charging up that account. And that's what happened here. And that's what was actually in the record here, that the defendant's modus operandi was kind of a blitzkrieg of access device fraud, using copies of the same account number, copies of the same card to maximize the fraud game. OK, thank you very much. Sir, we'll give you one minute and rebuttal. I guess, let's see, what do you have? One minute. Thank you, Your Honor. I want to move on to whether it's harmless, but I did want to say I think Your Honor's focus on the account number words in the statute hits the point right on the head about the proper interpretation. The judge did make a finding that duplication didn't matter. The reason she made that finding was probably not so much because there was clear evidence in the record of duplication, but there was clearly a position of defense counsel that he was prepared to present that evidence if it mattered. He didn't because the judge said it didn't matter. There's four places in the excerpt of record where he points to how and why he's concerned that this 770 or even 400 isn't accurate. At excerpt 11 to 12, he said he's prepared to prove there's overlap in two of the exhibits attached to the declaration. At excerpt 13, he said there might be further overlap with the 112 credit cards. At excerpt 17, he said there's a possibility of even more duplication. At excerpt 21 to 22, he raises concerns about the reliability because this agent's not a forensic analogist. Also, Your Honor, Judge Berzon and Your Honors also, I think it is important even if it's 400-something versus 700-something. That gets you in the same guideline range, but this judge was clearly focused on 3553A concerns, so it seems very plausible that her finding there were just a little more than half as many account numbers or access devices might have made a difference to her 3553A analysis. I think I've gone 30 seconds over my minute. Thank you very much. Thank you both. Thank you, Your Honor. The case is United States v. Wilbur. Just a minute and we will take a short
judges: Gould, Berzon, Zouhary